337 So.2d 848 (1976)
BABSON BROS. CO., an Illinois Corporation, Appellant,
v.
Virgil ALLISON d/b/a Allison Distributing Co., Appellee.
No. Z-59.
District Court of Appeal of Florida, First District.
October 6, 1976.
*849 John A. DeVault, III, of Bedell, Bedell, Ditmarr & Zehmer, Jacksonville, for appellant.
David R. Lewis, of Blalock, Holbrook, Lewis, Paul & Issac, Jacksonville, for appellee.
McCORD, Judge.
This is an appeal from final judgment entered upon a jury verdict against appellant for $20,000 compensatory damages and $65,000 punitive damages upon appellee's complaint charging that appellant, Babson Bros. Co., an Illinois corporation (hereinafter referred to as the Illinois corporation) maliciously interfered with a contract between appellee Virgil Allison, d/b/a Allison Distributing Company (hereinafter referred to as Allison) and Babson Bros. Co. of Georgia (hereinafter referred to as the Georgia corporation). This is the second appearance of this case before this court, the first being Babson Bros. Co. v. Allison, 298 So.2d 450 (Fla. 1 DCA 1974).
The Illinois corporation manufactures and sells milking machines and other dairy farm equipment using the tradename "Surge." It is a closely held family corporation, its stockholders all being members of two Babson families. Distribution companies with shareholders of the same two families as the Illinois corporation and with common officers and directors with the Illinois corporation were formed in various parts of the country as warehouse operations to distribute the products manufactured by the Illinois corporation. The Georgia corporation is one of these distribution companies, and its officers and directors are all officers and directors of the Illinois corporation. The warehouse operation of the Georgia corporation sometime prior to 1971 was transferred to the central warehouse located at the corporate headquarters of the corporations in Illinois. Allison became the Surge dairy farm equipment dealer for the northeast Florida area in 1959. He operated under contract with the Georgia corporation which by its terms was terminable at will on notice by either party and expired by its terms one year after entry. Ken Harrington was appointed Assistant General Sales Manager in charge of the Illinois corporation's sales and marketing for all areas east of Chicago in 1968 and was delegated the authority for determining whether dealership agreements would be renewed, terminated or cancelled. It is unrefuted that such authority was delegated to a Mr. Skulborstad by officers of the Illinois corporation who were also officers of the Georgia corporation and by him in turn *850 delegated to his subordinate, Harrington. Because of alleged dissatisfaction with Allison as a dealer, Harrington directed his division manager for Florida to notify Allison 30 days before expiration of the contract that they did not choose to renew it. Such was done by the division manager delivering to Allison a "dealer cancellation notice." Since Harrington was an employee of the Illinois corporation rather than the Georgia corporation, and Allison's contract was with the Georgia corporation, such termination or lack of renewal of the dealership contract formed the predicate for this suit against the Illinois corporation.
Allison acknowledged that Harrington was the representative with whom it dealt when it had "customer complaints, a shipping problem or anything" and that after receiving the termination notice it was Harrington that it contacted for assurance that the notice was valid. From the testimony of Harrington, it is apparent that he did not know anything about the organization of the Georgia corporation. He did not know who its officers or stockholders were or where its offices were located. It is not necessary, however, that one be an employee of a corporation in order to be its agent. Economic Research Analysts, Inc. v. Brennan, 232 So.2d 219 (Fla. 4 DCA 1970). Since Harrington had authority to terminate or not renew the contract on behalf of the Georgia corporation, his employer cannot be held liable for interference with the contract between the Georgia corporation and Allison. Said v. Butt, (Eng. 1920), 3 K.B. 497, 11 B.R.C. 317; Greyhound Corp. v. Commercial Casualty Ins. Co., 259 App.Div. 317, 19 N.Y.S.2d 239 (1940); Rhine v. Sanders, 100 Ga. App. 68, 110 S.E.2d 128 (1959).
This case must be reversed for another reason. The Illinois corporation correctly contends that it was privileged to interfere with the contract between Allison and the Georgia corporation because it has a financial interest in the business of the Georgia corporation. The most recent draft of the Restatement of the Law of Torts states as follows:
"769 Privilege of One Having Financial Interest in Business of Person Induced. One who has a financial interest in the business of another is privileged purposely to cause him not to perform a contract with a third person, or not to enter into or continue a contractual relation with him, in the course of that business, if the actor
(a) does not employ improper means, and (b) acts to protect his interest from being prejudiced by the contract or relation." Restatement (2d) of Torts § 769 (Tent. Draft No. 14 approved by the Institute 5/21/69).
The financial interest which one must have to come within the privilege varies. In this regard, we find the following statement in Prosser, Law of Tort § 129, pages 944-45 (4th Ed. 1971):
"a. Financial interest. The financial interest in another's business requisite for the privilege stated in this Section is an interest in the nature of an investment. A part owner of the business, as for example, a partner or stockholder, has at least such an interest." Comment a, Restatement of Torts § 769 (1939).
"Where the defendant acts to further his own advantage, other distinctions have been made. If he has a present, existing economic interest to protect, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it... ."
It is clear that a controlling stockholder of a corporation falls within the privilege when he interferes with a contract between the corporation and a third person. See Covert v. Terri Aviation, Inc., 197 So.2d 12 (Fla. 3 DCA 1967), and Felsen v. Sol Cafe Mfg. Corp., 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969). While in the case sub judice the Illinois corporation did not own the stock of the Georgia corporation, its stockholders did  all of the stock of the two corporations was held by two families. *851 This is a distinction without a material difference.
In addition to the common stock ownership of the two corporations, the Illinois corporation had a clear financial interest in its distributors' contracts with Surge dealers selling and servicing the Illinois corporation's products. Such is an interest which will invoke the privilege. See Pierce Ford Sales, Inc. v. Ford Motor Company, 299 F.2d 425 (2 Cir.1962); Zoby v. American Fidelity Company, 242 F.2d 76 (4 Cir.1957); and International Expositions, Inc. v. City of Miami Beach, 274 So.2d 29 (Fla. 3 DCA 1973).
Reversed.
SCHLEGEL, LEW E., Associate Judge, concurs.
BOYER, C.J., dissents.
BOYER, Chief Judge (dissenting).
I respectfully dissent. The evidence and reasonable inferences to be drawn therefrom created conflicts which in my view were properly to be resolved by the trier of fact. The jury performed its function which was not disturbed by the learned trial judge. I would affirm.