301 So.2d 38 (1974)
ORKIN EXTERMINATING COMPANY, INC., Appellant,
v.
Frank C. GIRARDEAU, Appellee.
No. T-451.
District Court of Appeal of Florida, First District.
September 24, 1974.
Rehearing Denied October 22, 1974.
Harold B. Wahl of Loftin & Wahl, Jacksonville, for appellant.
Ralph Roberts of Roberts & Roberts, Jacksonville, for appellee.
RAWLS, Chief Judge.
Appellant Orkin brings this appeal from a final judgment enjoining appellee Girardeau from engaging in the pest control business in the San Jose area of the City of Jacksonville, Duval County, Florida. The salient point raised by Orkin is whether the trial judge abused his discretion in *39 limiting to the San Jose portion of the City of Jacksonville the area in which Girardeau was enjoined from competing with Orkin.
Orkin is engaged in the pest control business in the Jacksonville trade area which Orkin defines as encompassing Duval, Nassau, Clay, St. Johns and Baker Counties and ten miles therefrom. Girardeau was employed by Orkin's Jacksonville office on September 1, 1970, as a serviceman. Orkin's initial training of Girardeau consisted of one four-hour course which was primarily related to sales and for a week or so Girardeau rode with other servicemen who showed him the ropes. In addition, Girardeau took two tests which Orkin considers a part of its training. According to Girardeau, Orkin gave him the answers to the questions on the test and told him not to make a perfect score. Last Girardeau was given an Orkin Serviceman Guide which, after numerous pages on how to collect bills and greet customers, contains two pages in the back listing various chemicals used for pest control. According to Girardeau most of his knowledge on pest control was learned from material he purchased himself.[1]
On December 24, 1970 (approximately four months after being employed), Orkin presented Girardeau with an employment contract which he was to either sign or be "out on the streets". This contract provided that Girardeau, for a two-year period of time after he terminated his employment with Orkin, would not engage in the pest control business in Duval, Nassau, Clay, St. Johns or Baker Counties. Girardeau received no increase in compensation as consideration for signing this contract.
The parties are in agreement that during Girardeau's employment with Orkin he was assigned exclusively by Orkin to the San Jose area of the City of Jacksonville. The only exception to this was the initial week or so of training and some 10, 12 or 15 times[2] when Girardeau was called upon by Orkin to make emergency trips to other parts of the Jacksonville trade area. Girardeau did not have the list of Orkin's customers nor was there evidence that he was familiar with the pricing arrangement or other agreements Orkin had with its customers.[3] On February 1, 1973, Girardeau terminated his employment with Orkin. Thereafter, he became employed by Atlas Exterminating Company as a serviceman in the Jacksonville area. Orkin instituted the instant suit to enjoin Girardeau, pursuant to his contract of employment, from engaging in the pest control business in Duval, Nassau, Clay, St. Johns and Baker Counties. The trial judge upheld the non-competitive agreement but limited its applicable area to the San Jose portion of the City of Jacksonville. We agree with the trial judge's determination.
At common law contracts which hindered a man's right to follow his calling were considered to be against the public policy and thus void.[4] In 1953 the legislature modified the common law to the extent that contracts which restrained an employee from engaging in an occupation similar to that pursued by his former employer may now be enforced, provided the contract embraces a reasonably limited time and area.[5] Where the area covered by the contract is unreasonable, the statute contemplates that the trial judge has jurisdiction *40 to determine in his sound discretion what would be a reasonable area and to, in his discretion, enforce the covenant not to compete in the limited area.[6]
What is a reasonable area is a factual matter to be determined in each case.[7] Under the facts of this case, we find that the trial judge was most correct in exercising his discretion. Girardeau, while an employee of Orkin, never worked outside the San Jose area except on some very few times when, at Orkin's request, he made emergency calls to other areas. The work Girardeau performed for Orkin was that of a serviceman for which he received from Orkin little training. Under the facts of this case, to prohibit Girardeau from engaging in any phase of the pest control business in Duval, Nassau, Clay, St. Johns and Baker Counties would be unconscionable and violate Florida Statute 542.12.
The judgment appealed is affirmed.
JOHNSON, J., concurs.
McCORD, J., dissents.
McCORD, Judge (dissenting).
This is an appeal from final judgment in an action by Orkin Exterminating Company, Inc., seeking to enjoin appellee from violating a non-competitive agreement contained in his employment contract with appellant. The trial court granted an injunction but materially reduced the territory covered by the non-competitive agreement.
Appellant is engaged in the pest control business and its offices in Jacksonville handle Duval County and the surrounding trade area, including Nassau, Clay, St. Johns and Baker Counties. Appellee went to work for appellant in Jacksonville in 1970, and after a short period of employment, he was requested to and did execute an employment contract as a condition to his continued employment. He was employed as a service man for appellant's Jacksonville office. By the non-competitive agreement, appellee recognized the value of Orkin training, trade area and trade secrets and he specifically agreed not to compete or engage in pest control work or in competition in the Jacksonville trade area (which was defined as Duval, Nassau, Clay, St. Johns and Baker Counties and 10 miles therefrom) for a period of two years from time of leaving Orkin. At the same time, he receipted for a list of appellant's customers.
After working for appellant over two and one-half years, appellee terminated his employment on January 31, 1973. He left on his own volition  appellant's manager tried to persuade him to remain. Soon thereafter, he went to work for a competitor covering exactly the same territory as he had worked with appellant and as was specified in his employment contract with appellant.
The trial court denied appellant's motion for temporary injunction, and after final hearing, enjoined appellee from violating the non-competitive provisions of the employment contract for a period of two years from February 1, 1973, but only within the San Jose area (a small part of the City of Jacksonville). The court thereby allowed appellee to work for appellant's competitor in the balance of Duval County and in the remainder of appellant's trade territory. Appellee testified that the *41 competitor's trade territory is the same as appellant's  Duval, Clay, St. Johns, Nassau and Baker Counties.
While appellee's work with appellant was primarily in the San Jose area of Jacksonville, he did on occasions work in other parts of the trade territory. The trial judge considered it reasonable to restrain him from competing only in the San Jose territory. From the judgment, it appears that the trial judge also gave considerable weight to the fact that appellee was a service man and not a manager of the company. He attached little significance to the training program administered to appellee by appellant and, in line with appellee's testimony, he mentioned that this type of information was available to the public generally "through the public library, the state pest control commission, the federal government, and probably through the county farm agent." He found that the two year non-competitive limitation was neither harsh nor oppressive but that the area defined in the contract, under the facts of the case, was wholly unreasonable, harsh and created an oppressive result on the employee.
I disagree with the conclusions of the trial judge as applied to the evidence and consider that the failure of the chancellor to include in the injunction the trade area as defined in the contract of employment was an abuse of discretion.
Appellee signed the employment agreement as a condition of his continuation as an employee and worked for over two years under it. Having had no previous training, experience or knowledge in pest control, he accepted the training given him by appellant. He was given a list of all of appellant's customers as aforesaid and during his employment he had access to appellant's files and knew or had access to their trade secrets. The record shows that appellee is not completely dependent on pest control employment for sustenance but receives Navy retirement pay of $600 per month. An injunction against appellee in this trade area would, of course, not prevent him from working for a pest control company in any other area of the state or county, and in such other areas he could freely practice the trade which was taught to him by appellant. Also, he can, of course, remain in the Jacksonville trade area if he so desires and can follow any other available line of work. The court should not assist him in violating his agreement. The record shows that he is now serving for appellant's competitor a number of the same customers he served for appellant. An injunction against appellee's competing for a period of two years and in the Jacksonville area as previously defined would have been neither unduly harsh nor oppressive under the circumstances. In this connection, see Orkin v. Capelouto, Fla., 183 So.2d 532. Also, footnote 1 to Orkin v. Truly Nolen, Fla. App. 3rd, 117 So.2d 419 (cert. den. Fla., 120 So.2d 619) is appropriate here and I quote therefrom:
"In the instant case, it is undisputed as shown by the testimony and exhibits that for the proper protection of a company such as Nolen or Orkin engaged in the pest control, exterminating, fumigating and termite control business, the business requires secrecy in connection with the methods and systems employed, and that for the proper protection of the company, it is absolutely necessary and essential that all matters connected with, arising out of, or pertaining to the business of the company, its methods and systems and the names of its customers, the addresses and prices, be kept secret and confidential. It is undisputed that by virtue of employment, the personnel will become possessed of the knowledge of the names, addresses and prices of customers *42 of the employer within the territory worked by the employee and the methods, systems, techniques, processes and formulas employed by the employer. The nature of the employer's business and the training received by the employees are of a confidential and secret nature and should not be disclosed or revealed to any competitor (see employment contracts entered into between Orkin and defendant Pierce and defendant Synder, plaintiff's Exhibits 12-A and 12-B). That is one of the reasons why restrictive covenants have been inserted into Nolen employment contracts with its employees and the Orkin employment contracts with its employees. The contracts of employment used by Orkin in Florida are similar to the Orkin contracts used by the national Orkin organization which Orkin has asked courts of other jurisdictions to enforce because of the confidential matter, trade secrets, etc."
In Westshore Restaurant Corp. v. Turk, Fla., 101 So.2d 123, the Supreme Court quoted with approval as follows from the Supreme Court of Colorado in Whittenberg v. Williams, 110 Colo. 418, 135 P.2d 228, 229, citing an earlier opinion of that court:
"Where one is so lost to a sense of moral obligation as to accept a full consideration for his stock in trade and goodwill, upon express condition that he refrain from again entering that business for a limited time, within a certain territory, and then immediately, having pocketed the fruits of the agreement, deliberately and willfully ignores the controlling condition thereof, courts should certainly not hunt for legal excuse to uphold him in such moral delinquency."
In my view, the trial court erred. I, therefore, dissent.
NOTES
[1] The trial judge found that information on pest control is available to the general public through the public library and the United States Government.
[2] Girardeau's supervisor admitted that the most Girardeau served any of Orkin's customers outside of the San Jose area was 10, 12 or 15 times.
[3] Even though in the contract not to compete Girardeau acknowledges that he has received a list of Orkin's customers, he in fact did not.
[4] Standard Newspaper, Inc. v. Woods, 110 So.2d 397 (Fla. 1959).
[5] Florida Statute 542.12.
[6] Flammer v. Patton, 245 So.2d 854 (Fla. 1971); Kofoed Public Relations Assn., Inc. v. Mullins, 257 So.2d 603 (Fla.App. 4th 1972); and Kenco Chemical & Manufacturing Co., Inc. v. Railey, 286 So.2d 272 (Fla.App. 1st 1973).
[7] Orkin argues that the contract involved in the instant litigation has previously been held valid, and thus that in this case it is per se valid as written. Orkin v. Capelouto, 183 So.2d 532 (Fla. 1966).