Fred L. AHERN and A. L.
Outlaw, Plaintiffs,

v.

BOEING COMPANY, a foreign
corporation, Defendant.

No. 80–1003–Civ–J–B.

United States District Court,
M. D. Florida,
Jacksonville Division.

June 4, 1982.

Robert C. Gobelman, Jacksonville, Fla.,
for plaintiffs.

George L. Hudspeth, Jacksonville, Fla.,
for defendant.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case is before the Court on the Motion of Boeing Company for Summary Judgment, filed herein on March 3, 1982. Plaintiffs filed their memorandum in opposition on March 30, 1982. Each party subsequently filed a reply memorandum and the Court heard oral argument by the parties on May 7, 1982.

## I. FINDINGS OF FACT

The following facts are not in dispute: The case involves the alleged tortious interference by defendant with a contractual agreement between plaintiffs and Scientific Energy Engineering (hereinafter "SEE"). Plaintiffs and SEE had entered into a joint venture agreement (hereinafter "Agreement") concerning the testing, production, sales, and leasing aspects of an incinerator device. By the terms of the Agreement, plaintiffs were to have had various exclusive rights in connection with the marketing of the incinerator.

Sometime after the Agreement had been reached, plaintiffs and SEE began having disagreements. These disagreements eventually resulted in SEE's filing suit in the Circuit Court of the Fourth Judicial Circuit of Florida to clarify the agreement and to recover damages from plaintiffs. While no damages were awarded, the state court determined that plaintiffs had various rights under the Agreement and that the Agreement was terminable at will upon thirty days notice. Plaintiffs concede for the pur-

poses of this case that the Agreement must be considered a contract terminable at will.

At some point during the state court action, SEE entered into negotiations with defendant. Whether defendant or SEE actually initiated the negotiations is in dispute, but the resolution of that question is immaterial to the issue at hand. In any event, SEE and defendant initially entered into an option agreement, and ultimately they entered into a contract (hereinafter "Contract") concerning the incinerator. Under the terms of the Contract, defendant was given certain exclusive rights in the marketing of the device, much as plaintiffs had previously been given under the Agreement. After entering into the Contract with defendant, SEE terminated the Agreement with plaintiffs. Plaintiffs then brought the instant action asserting that defendant tortiously interfered with the Agreement between plaintiffs and SEE. While one of the issues raised by plaintiffs in their Complaint concerns defendant's motivation for entering into the Contract, plaintiffs have conceded that at least part of defendant's purpose was to advance its business interests.

## II. CONCLUSIONS OF LAW

■ It is well settled in Florida that, to be actionable, tortious interference requires (1) the existence of an advantageous business relationship under which plaintiffs have legal rights, (2) an intentional and unjustified interference with that relationship by defendant, and (3) damage to plaintiffs as a result of the breach of the business relationship. *Lake Gateway Motor Inn v. Matt's Sunshine Gift Shops, Inc.*, 361 So.2d 769, 771 (Fla. 4th DCA 1978), *cert. denied*, 368 So.2d 1370 (Fla.1979).

Here, defendant avers that the Agreement was terminable at will and, as a result, its interference with the Agreement was justified as a matter of law. While plaintiffs dispute the conclusion that defendant's interference was justified, plaintiffs do concede that for the purposes of this case their Agreement with SEE must be considered a contract terminable at will.

In order to determine whether defendant's interference with the Agreement was justified, the Court must initially consider whether a contract terminable at will provides a party to that contract any protection whatsoever from interference. If the answer to that inquiry is in the negative, then defendant is entitled to summary judgment. If the answer is in the affirmative, then the Court must determine the extent of the protection afforded by the contract before concluding whether defendant is entitled to judgment at this stage of the proceedings.

The Court now turns to the first question—whether a contract terminable at will provides a party any protection from interference. The oldest Florida case addressing the issue, and the only decision by the Supreme Court of Florida pertinent to this discussion, is *Chipley v. Atkinson*, 23 Fla. 206, 1 So. 934 (1887). In *Chipley*, defendant caused plaintiff to be discharged from his place of employment. Plaintiff, who had been employed under a contract terminable at will, brought suit alleging tortious interference with his employment contract. The case proceeded to trial and the jury awarded plaintiff judgment in the amount of $740.00. On appeal, though reversing the trial court, the court concluded that an action could lie under appropriate circumstances even where the interference was with a contract terminable at will.

The *Chipley* rationale was followed in *Mays v. Stratton*, 183 So.2d 43 (Fla. 1st DCA), *cert. denied*, 188 So.2d 817 (Fla.1966). *Mays* held that a contract terminable at will provided some measure of protection from interference, stating "[t]he general rule prevailing in this country appears to be that merely because a person's employment is terminable at will, this fact will not relieve one whose wrongful act caused the employee to lose a position of gainful employment." *Id.* at 45.

The Fourth District Court of Appeal, in *Wackenhut Corporation v. Maimone*, 389 So.2d 656 (Fla. 4th DCA 1980), gave the issue careful analysis. *Wackenhut* involved a security service's attempt to gain addi-

tional clientele by interfering with a competitor's contractual relationship with a supermarket warehouse. Though the contract was terminable at will, the court concluded that clear allegations of an intentional interference with an existing relationship, coupled with legal rights and damages, sets forth a prima facie case. Thus, the court found that a contract terminable at will provides some degree of protection from interference.

▮ Up until this point, the law in Florida appeared to be settled that a terminable at will contract provides some sort of protection from interference by third parties. However, two very recent conflicting decisions out of the Third District Court of Appeal disturb this apparent accord. Specifically, *A. R. E. E. A., Inc. v. Goldstein*, 411 So.2d 310 (Fla.3d DCA 1982) appears to have deviated from established principles, holding that there can be no tortious interference with a contract which is terminable at will. However, in *Unistar Corporation v. Child*, 415 So.2d 733, 7 Fla.L.W. 992 (Fla.3d DCA, 1982), the court, speaking through a slightly different panel of judges, reiterated the general rule that an action will lie where a party tortiously interferes with a contract terminable at will.

In reviewing the authorities discussed above, the Court rejects the position set forth in *A. R. E. E. A.* and holds that even where the contract interfered with is terminable at will, allegations of an intentional and unjustified interference with an existing business relationship which causes damage to plaintiff establishes a prima facie case of tortious interference. In other words, the Court holds that a contract terminable at will provides some degree of protection from interference. In reaching this conclusion, the Court notes that while *A. R. E. E. A.*'s holding is clear, the two paragraph, per curiam opinion is devoid of analysis to support what appears to be a marked break from prior Florida decisions. The cases cited by the *A. R. E. E. A.* court in support of its holding—*Lake Gateway* and *Wackenhut*—simply do not stand for the conclusion reached in *A. R. E. E. A.*

Having concluded that a terminable at will contract provides some protection from interference by a third party, the Court must consider the extent of the protection afforded. Again, the Court will begin its inquiry with *Chipley*. There, the court focused on the purpose of the interference in determining whether it was actionable. The court concluded that if the interference was merely for the purpose of injuring the party to the contract then such interference would be actionable. The court explained thusly:

> [I]t is apparent that neither the fact that the term of service interrupted is not for a fixed period, nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service, or to refuse to perform his agreement, is of itself a bar to an action against the third person maliciously and wantonly procuring the termination of or refusal to perform the agreement. It is the legal right of the party to such agreement to terminate it or refuse to perform it, and in doing so he violates no right of the other party to it, but, so long as the former is willing and ready to perform, it is *not the legal right, but is a wrong, on the part of a third party to maliciously and wantonly procure the former to terminate or refuse to perform it. Such wanton and malicious interference for the mere purpose of injuring another is not the exercise of a legal right.* [emphasis added].

*Chipley v. Atkinson*, 1 So. at 940.

A similar analysis was employed in *Wackenhut*. There, as noted above, the court found that interference with a contract terminable at will could support a prima facie case of tortious interference. However, the court's inquiry did not end at this point. The court further explained that once a prima facie case has been established, the burden shifts to the interferer to demonstrate that the interference was justified. In evaluating the justification for the interference with a contract terminable at will, the court reasoned:

"[J]ustification" is better understood as a showing that the "... interference is *privileged* by reason of the interests furthered by his conduct .... Where the contract interfered with is terminable at will, the privilege of competition has been recognized. In such a case there is no contract right to have the relation continued, but only an expectancy .... With such an expectancy ... a competitor has the privilege of interference in order to acquire the business for himself." [citations omitted; emphasis in original].

*Wackenhut Corporation v. Maimone*, 389 So.2d at 658. The court went on to indicate that this rule applies to a broad spectrum of cases including employment contracts, contracts for goods and contracts for services.

In light of the *Chipley* and *Wackenhut* analyses concerning the extent of protection from interference afforded by a contract terminable at will, it is apparent in the case now before the Court that if defendant's interference with the Agreement was motivated by competitive interests, and not by the mere purpose of injuring plaintiffs, then the interference was privileged. Furthermore, in considering defendant's motivation for the interference, the Court is cognizant of *Ethyl Corp. v. Balter*, 386 So.2d 1220 (Fla.3d DCA 1980), *pet. for rev. denied*, 392 So.2d 1371 (Fla.), *cert. denied*, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). There, the court held that if the privilege to protect or to further one's legitimate economic situation is present, then the concomitant presence of malice or ill will, and the expression thereof, is not actionable as a tortious interference.

 In this case, the issue of defendant's motivation for the interference with the Agreement would normally be a question of fact with the defendant having the burden of proving that the interference was justified. However, plaintiffs have conceded "that Defendant's motivation, at least in part, in entering into the contractual relationship with SEE, was to advance Defendant's business interests." The Court concludes that where, as here, there is a contract terminable at will and part of defend-

ant's motivation for interfering with that contract was to advance defendant's business interests, the interference is privileged as competition and is therefore justified as a matter of law.

The Court having held that defendant's interference was justified as a matter of law, the parties agree that no other issues remain to be resolved, either by the Court or a jury. Thus, the entry of summary judgment is appropriate.

In accordance with the foregoing, it is

ORDERED:

1. That the Motion of Boeing Company for Summary Judgment, filed herein on March 3, 1982, is granted.

2. That the Clerk shall enter judgment on this date in favor of defendant Boeing Company and against plaintiffs Fred L. Ahern and A. L. Outlaw.