796 So.2d 1267 (2001)
Kenneth M. SHIELDS and Central Florida Pavers, L.L.C., a Florida limited liability company, Appellants,
v.
The PAVING STONE COMPANY, INC., a Florida Corporation, Appellee.
No. 4D01-152.
District Court of Appeal of Florida, Fourth District.
October 17, 2001.
Paul R. Berg of Clem, Polackwich, Vocelle & Berg, LLP, Vero Beach, for appellants.
Cort A. Neimark of Neimark & Nadel, P.A., Fort Lauderdale, for appellee.
SHAHOOD, J.
Appellants, Kenneth M. Shields and Central Florida Pavers, L.L.C., appeal from the entry of a temporary injunction enjoining appellants from engaging in certain paving stone related activities for a time certain due to Shields' breach of a nondisclosure/nonsolicitation agreement. Appellants likewise appeal from an order granting their motion to modify the temporary injunction. Because we hold that the order granting the injunction was overly broad and did not conform to the trial court's oral ruling, we remand with directions that the order on the injunction be modified.
Approximately six months after being hired as a salesman to work in The Paving Stone Company's Orlando office, Shields signed a nonsolicitation/nondisclosure agreement. In exchange for his continued employment with Paving Stone, Shields agreed to certain conditions, including that for a period of 24 months following the termination of his employment, he would not reveal the names or addresses of customers of the company or call or solicit anyone who was a current customer of the company or a potential customer if such potential customer were identified through leads developed during the employee's course of employment.
Shields signed the agreement in April 2000 and left Paving Stone in May 2000. *1268 Shortly thereafter, Shields started his own paving stone company, Central Florida Pavers. In seeking an injunction, Paving Stone alleged that Shields contacted or solicited its customers and as a result, it lost business and or customer relationships to Central Florida Pavers.
As evidence of its customer list, Paving Stone submitted a log of every contract opened from 1998 until the present, concentrating on tract home builders and custom home builders. Paving Stone's President admitted that Paving Stone did not have exclusive contracts with any of the contractors listed and that many were available by looking through trade journals or the yellow pages. Paving Stone's President also acknowledged that it was not concerned with commercial projects which took open bids because those jobs were open to all contractors and were awarded to the lowest priced competitor. Paving Stone's manager admitted that because Shields had prior paving stone experience, he knew how to develop leads and that anyone with a subscription to the trade journals could obtain information about construction projects. Additionally, Paving Stone submitted a spread sheet of customers that Shields and other employees were in contact with while working for Paving Stone and a list of jobs that Paving Stone allegedly lost to Central Florida Pavers.
Shields claimed that he did not directly solicit any of the customers listed on Paving Stone's exhibit list and that Central Florida Paving was not doing business with many of the names listed. Of those customers listed who Central Florida Pavers had in fact done business with, Shields claimed that several of those customers came directly to Central Florida Pavers or were obtained through an open bid after Paving Stone had been fired from a job. Shields stated that when he solicited customers, he specifically asked whether they were taking bids and whether they did business with a particular company. He claimed that he purposefully veered away from those customers he cultivated while working at Paving Stone.
In its oral ruling, the trial court held that Central Florida Pavers shall not solicit those customers listed in Paving Stone's customer log, Exhibit 2, for a period of two years within a 75 mile radius of the Orlando office. The written order, however, is inconsistent with the court's oral ruling and is overly broad.
In its written order, the court merely reiterated the exact language taken from Paving Stone's nonsolicitation/nondisclosure agreement. In addition to the two-year nonsolicitation of Paving Stone customers, the court's order prohibits Shields from: making known the names or address of customers; disclosing sales methods, pricing or costs, service requirements; calling on any current customers on whom he called or became acquainted with during his employment with Paving Stone or potential customers; disclosing any marketing, sales, service, costs, business practices, methods and information relating to the company; using any books, records, customer records, lists and other information relating in any manner to the customers of Paving Stone; and doing anything which would otherwise damage, harm or injure Paving Stone's relationship with any of its customers. These prohibitions are clearly beyond the court's oral ruling and the evidence presented.
While Paving Stone clearly demonstrated some type of legitimate business interest in need of protection, i.e., its customer log, it did not provide sufficient evidence to support the overinclusive nature of the restrictive covenants which it alleged were necessary to protect its customer base. As stated in section 542.335(1)(c), Florida *1269 Statutes, "[i]f a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests." Because Paving Stone did not have exclusive relationships with any of its customers and information on customers was readily obtainable through the yellow pages and trade subscriptions, the nonsolicitation/nondisclosure agreement was not reasonable to protect Paving Stone's customer base. Moreover, Paving Stone conceded that it had no control over contracts awarded through open bidding.
Accordingly, the order granting the injunction must be modified to conform to the trial court's oral ruling and protect only those interests reasonably necessary. In enjoining Shields from soliciting those customers listed on Paving Stone's customer list, the order must clearly direct that such prohibition does not include customers obtained through the open bidding process.
As to all other issues raised on appeal, including the order modifying the injunction, we affirm.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH DIRECTIONS.
WARNER and KLEIN, JJ., concur.